FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

98 OCT -1 PM 12: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

BETTY F. SMITH,                          ]
                                         ]
          Plaintiff,                     ]
                                         ]
     vs.                                 ]        CV 97-N-2727-NE
                                         ]
CITY OF HUNTSVILLE, et al.,              ]
                                         ]
          Defendants.                    ]

ENTERED

OCT 1 1998

### Memorandum of Opinion

In this action, plaintiff Betty F. Smith, a former employee of the City of Huntsville,

Alabama, attempts to state various claims for discrimination in connection with the

termination of her employment under Title VII of the Civil Rights Act of 1964, as amended,

(Title VII), 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act (ADEA),

29 U.S.C. § 621, *et seq*, and the First and Fourteenth Amendments to the United States

Constitution. Defendants are: (1) the City of Huntsville (the "City"); (2) the mayor of

Huntsville, Loretta Spencer ("Spencer"); (3) City Council members Richard Showers, Mark

Hale, Glenn Watson, Ken Arnold, and Bill Kling (collectively "the Council members"); and

(4) Ralph Stone ("Stone"), Director of Recreational Services and Landscape Management

for the City. *Complaint* at ¶¶ 4, 5; *First Amendment to Complaint* at ¶ 1.

The court presently has for consideration separate motions to dismiss by Spencer,

the Council members, and Stone (collectively "the individual defendants"). The motions

are fully briefed and are ripe for decision. Upon due consideration the motions will be

granted in all respects.

## I.    Statement of the Case.

### A.    Factual Allegations.

Smith alleges that she began her employment with the City on September 9, 1985. *Complaint* at ¶ 7. Smith maintains that throughout her tenure she worked as Deputy Director of Recreation within the Department of Parks and Recreation, *Id.,* and claims that she received an overall performance rating of "outstanding" on all her employee evaluations except the first evaluation in 1986, which rated her as "satisfactory." *Id.* at ¶ 8. Smith alleges that, despite solicitations by Spencer and members of her campaign staff, she did not support Spencer in her successful campaign for mayor during 1996. *Id.* at ¶ 10.

After Spencer took office, according to Smith, the City advertised a vacancy for the position of Director of Recreation and Landscape Management, which is allegedly the position directly above Smith. *Id.* at ¶ 11. Smith claims that she was qualified for the position, that she is a sixty-five-year-old female, and that she and twenty other applicants applied for the position. *Id.* at ¶¶ 12-13; *First Amendment to Complaint* at ¶ 10. Smith alleges that after Spencer's administrative assistant interviewed her the City hired Stone, her subordinate for twelve years. *Complaint* at ¶ 14. According to Smith, Stone is a less qualified male who is approximately forty years old, and who did not meet the minimum educational requirements for the position. *Id.*; *First Amendment to Complaint* at ¶ 10. Subsequently, Smith filed a charge of discrimination with the EEOC charging gender and age discrimination. *Complaint* at ¶ 15; *Motion to Supplement Complaint*, filed Dec. 19, 1997.

2

According to Smith's complaint, on January 14, 1997—the day that the City allegedly was served with a copy of the EEOC charge—Stone "entered Smith's office and screamed at and threatened Smith," saying that "he would not allow her actions to cause him to 'give up or fail.'" *Complaint* at ¶ 17. The plaintiff charges that Stone then directed Smith to meet with the City's in-house counsel to discuss deficiencies in her job performance. *Id.* Smith then alleges that the City issued her a Notice of Formal Disciplinary Hearing, dated February 3, 1997, signed by Stone and Spencer, allegedly accusing Smith of "conduct unbecoming of an employee" based upon events that occurred in the first half of 1996. *Id.* at ¶ 19. On March 18, 1997, Smith amended her charge of discrimination with the EEOC, adding a claim of retaliation, and on July 30, 1997, the EEOC made a finding "that it is more likely than not that [Smith] was subject to unlawful retaliation . . . ." *Id.* at ¶ 21-22; *Motion to Supplement Complaint*, filed Dec. 19, 1997.

Notwithstanding the EEOC determination, Smith alleges that the City proceeded with its Formal Disciplinary Hearing and, on November 21, 1997, terminated her employment. *First Amendment to Complaint* at ¶ 2. This action by the City, according to the complaint, was "grossly in excess of what was warranted by the alleged transgression, even taking it all as true."[1] *Id.* She claims that "Stone, Spencer and the City failed to give [her] any of the progressive discipline that is called for in the Personnel Policies and Procedures of the City." *Id.* at ¶ 17. "Instead," according to Smith, "they jumped immediately to a disciplinary proceeding." *Id.*

---

[1] Neither the complaint nor the amended complaint describes the allegations of the City against Smith that formed the basis for the alleged Disciplinary Hearing.

3

Smith claims that she appealed to the City Council and, after hearing her appeal on

January 15, 1998, the Council members "found against her for the same discriminatory and

retaliatory reasons that [she] was subjected to this proceeding in the first place." *Id.* at ¶

2. Smith claims, "The City Council has overturned terminations and other disciplines of

younger male City employees that involved much more serious charges than those leveled

against [her], including for men accused of felonies in the performance of their duties."

*Id.* at ¶ 6.

### B.   Statement of Claims.

On November 17, 1997, Smith initiated this action by filing a complaint against the

City and against Spencer in "both her official and individual capacities. *Complaint* at ¶¶

4, 5. In Count One of her original complaint, Smith stated a claim against the City for

gender discrimination pursuant to Title VII.[2] *Id.* at ¶¶ 1, 24-27. In Count Two, incorporating

everything she had said before, Ms. Smith purported to make a claim against Spencer

under § 1983 for violations of her rights under the First Amendment to the United States

Constitution.[3] *Id.* at ¶¶ 1, 28-29.

On February 19, 1998, Smith amended her complaint, adding as defendants the

Council members and Stone. *First Amendment to Complaint* at ¶ 1. In Count One of the

---

[2] Ms. Smith did not specify whether this claim was intended to be pursuant to Title VII, Section 1983, or both. Insofar as she states that she filed an EEOC charge and received a right-to-sue letter but did not cite Section 1983, the court will assume the claim was intended to be brought under Title VII only.

[3] This claim illustrates the fallacy inherent in the practice of some lawyers of incorporating every factual allegation made in a complaint into every succeeding count. In her Count II, Ms. Smith does not specify whether Mayor Spencer is sued in her official or individual capacities or whether she is sued in that count in both capacities. In Paragraph 5, however, which as noted above was incorporated into this count, Ms. Smith states that "Defendant Spencer is sued in this lawsuit in both her official and individual capacities." To characterize this as sloppy and unprofessional pleading is to be kind.

4

amended complaint,[4] Smith incorporates the allegations of Count One of the original complaint and adds the Council members "in their official capacities." Thus, her claims in Count One are for gender discrimination pursuant to Title VII against the City and the Council members. *Id.* at ¶¶ 5-6. In Count Two of the amended complaint, Smith incorporates the allegations of Count Two of the original complaint and adds the Council members and Stone as defendants, leaving her with claims in this count against these defendants under § 1983 for alleged violations of her First Amendment rights. *Id.* at 7-8. She does not state whether claims in Count Two are against the Council members and Stone in their official capacities, their individual capacities, or both. *See id.* In Count Three of the amended complaint, Smith asserts a claim against the City under the ADEA. *Id.* at ¶¶ 9-10. In Count Four of the amended complaint, Smith makes claims against Spencer, Stone, and the Council members "in their individual and official capacities" for gender and age discrimination in violation of the Fourteenth Amendment to the United States Constitution, Title VII, and the ADEA. *Id.* at ¶¶ 11-12. In Count Five of the amended complaint, Smith states that the City "unlawfully deprived [her] of her rights to be free from discrimination under the Fourteenth Amendment to the United States Constitution, Title VII, the ADEA and 42 U.S.C. § 1983." *Id.* at ¶¶ 13-15. In Count Six of the amended complaint,

---

[4] A complaint that has been amended under Rule 15(a), Fed. R. Civ. P., is superceded by the amended complaint, *Fritz v. Standard Security Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982), and no longer serves any function in the case. *Jefferson v. H. K. Porter Co.*, 485 F. Supp. 356, 359 (N.D. Ala. 1980). Thus, technically, Ms. Smith's original complaint is a nullity in this action. None of the defendants has raised the issue, however, and the court will assume for present purposes that the plaintiff intended to, and did, add to rather than supplant her first complaint. The difficulty lies with the fact that she now has a Count One and a Count Two in both the original and the amended complaint. It is for this reason that the court has *sua sponte* combined and redesignated the counts in the original and the amended complaints in order that it and the parties may deal with a single and consistent set of claims.

Smith states claims for violations of "her due process rights," presumably both procedural and substantive, under the Fourteenth Amendment and § 1983 against all individual defendants in their individual and official capacities. *Id.* at 16-19. In Count Seven, Smith claims that the City retaliated against her in violation of Title VII and the ADEA after she filed her EEOC charge. *Id.* at ¶¶ 20-22. Finally, in Count Eight, Smith states: "All of the individual Defendants are responsible for their part in retaliation against [her] for her pursuit of her protected activities in filing her EEOC Charges." *Id.* at 23-24.

## II.    Standard for Decision.

A complaint may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). For purposes of ruling on a motion to dismiss, the allegations of the complaint are taken as true and are construed most favorably to the plaintiff. *Schuer v. Rhodes*, 416 U.S. 232, 236 (1974). A motion to dismiss is a procedural tool by which the defendant may challenge the legal sufficiency of the complaint. *See* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Civil 2d § 1356 (1990). The court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Cannon v. Macon County*, 1 F.3d 1558, 1565 (11th Cir. 1993). In other words, dismissal is appropriate "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A complaint may be dismissed when the allegations demonstrate that the plaintiff does not have a claim. *Bruce v. Wade*, 537 F.2d 850 (5th Cir. 1976); *Hepperle v. Johnston*, 544 F.2d 201 (5th Cir. 1976).

6

As a general rule, the complaint is only required to provide "a short and plain statement showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, in the Eleventh Circuit, a heightened level of pleading is required in order to maintain individual capacity claims against public employees pursuant to § 1983. *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1368 (11th Cir. 1998). The reason for the heightened pleading standard is "to eliminate nonmeritorious claims on the pleadings and to protect public officials from protracted litigation involving specious claims . . . ." *Oladeinde v. City of Birmingham, Ala.*, 963 F.2d 1481, 1485 (11th Cir. 1992) (quoting *Arnold v. Board of Educ.*, 880 F.2d 305, 309 (11th Cir. 1989)), *cert. denied sub nom. Deutcsh v. Oladeinde*, 507 U.S. 987 (1993). Under the heightened pleading standard, § 1983 complaints against public employees must be pled "with sufficient precision to put the defendant on notice of the nature of the claim and enable them to prepare a response and, where appropriate, a [dispositive] motion on qualified immunity grounds." *Malone v. Chambers County Bd. of Comm'rs*, 875 F. Supp. 773, 791 (M.D. Ala. 1994) (quoting *Brown v. Frey*, 889 F.2d 159, 170 (8th Cir. 1989), *cert. denied*, 493 U.S. 1088 (1990)); *see also Ferguson v. City of Montgomery*, 969 F. Supp. 674, 680 (M.D. Ala. 1997) (same), *aff'd*, 141 F.3d 1189 (11th Cir. 1998). To survive a motion to dismiss, the plaintiff "should allege detailed facts as to why the defense of qualified immunity cannot be sustained in [the action]." *Ross v. State of Ala.*, 893 F. Supp. 1545, 1554 (M.D. Ala. 1995).

## III.   Discussion.

In three separate motions, all the individual defendants have moved to dismiss all claims against them. The arguments for dismissal as to each individual defendant being

7

substantially the same, the court will treat related claims and grounds for dismissal together.

## A. Official Capacity Claims.

As a threshold matter, an "official capacity" claim against an individual is actually a claim against the governmental entity for which that individual acts. *Monell v. Department of Social Serv. of City of New York*, 98 S. Ct. 2018, 2035, n.5 (1978). The plaintiff alleges that all of the individual defendants are employees or officials of the City, and that with regard to all of the allegations made against them, they were acting in their official capacities as employees or officials of the City. In addition, the City is a defendant in this lawsuit. Therefore, any claims against the individual defendants in their "official capacities" are actually claims against the City. The Eleventh Circuit has noted, "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials . . . ." *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (affirming district court's directed verdict in favor of individual city officials sued in their official capacity). *See also Graham v. Connor*, 490 U.S. 386, 396 (1989) (A suit against a government official in his official capacity is a suit against the government agency for whom he is employed.)

Accordingly, to the extent that Smith brings § 1983 claims against Spencer, the Council members and Stone in their "official capacities," she actually makes claims against the City. There being no need for such duplication of claims and considering the potential

8

for confusion of the jury at trial, it is clear that the official capacity claims against the individual defendants brought under 42 U.S.C. § 1983 should be dismissed.

**B. Individual Capacity Claims.**

**1. Title VII and ADEA Individual Capacity Claims.**

In the Eleventh Circuit, claims against individuals are not cognizable under Title VII or the ADEA. The relief granted under Title VII is against the employer, not employees in their individual capacity. *See Edwards v. Wallace Community College*, 49 F.3d 1517, 1520 n.3 (11th Cir. 1995). Therefore, supervisory employees, although agents of the employer, are not "employers" under Title VII. *See Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991). Individuals are similarly not considered to be "employers" under the ADEA. *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995).

Smith argues that her claims for violations of Title VII and the ADEA against the individual defendants are actually claims pursuant to § 1983. She argues that, even though she may not be able to sue the individual defendants under Title VII and the ADEA directly, "she did validly bring Section 1983 claims against each of them based on their perpetration of Title VII and ADEA violations against her, as well as based on the constitutional deprivation of her equal rights." *Brief in Opposition to Defendants' Motions to Dismiss* at 4-5. While it is true that § 1983 affords a remedy for deprivation of federally protected rights, plaintiff's argument in this case is without merit.[5] In *Arrington v. Cobb County*, the Eleventh Circuit recently confirmed that "an allegation of a Title VII violation cannot

---

[5] Of course, § 1983 provides a remedy for race and gender discrimination based upon constitutional violations "under color of state law;" *See Johnson v. City of Fort Lauderdale*, 148 F.3d 1228, 1229 (11th Cir. 1998); however, Smith's claims in this regard are considered in Section III.B.2 of this opinion.

9

provide the sole basis for a § 1983 claim." 139 F.3d 865, 872 (11th Cir. 1998) (following *Allen v. Denver Public Sch. Bd.*, 928 F.2d 978, 982 (10th Cir. 1991), and *Hervey v. City of Little Rock*, 787 F.2d 1223, 1233 (8th Cir. 1986)). Under the rationale applied to Title VII claims in *Arrington*, Smith's ADEA claims pursuant to § 1983 against the individual defendants in this case are no more valid than are her Title VII claims. *See Arrington*, 139 F.3d at 872; *accord Great American Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375-78 (1979) (stating plaintiffs may not bypass the Title VII administrative process by enforcing their statutory rights under Title VII through § 1985).

Accordingly, to the extent that Smith would assert claims against the individual defendants under § 1983 for violations of Title VII or the ADEA, those claims are due to be dismissed.

### 2. Individual Capacity Claims for Constitutional Violations Subject to Qualified Immunity Defenses.

#### a. Qualified Immunity.

A government official performing discretionary functions is entitled to qualified immunity "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982). As the Eleventh Circuit has noted, "qualified immunity protects government officials performing discretionary functions from civil trials (and the other burdens of litigation, including discovery) and from liability if their conduct violates no 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Lassiter v.*

10

*Alabama A & M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457

U.S. at 818). A right may only be clearly established where "the contours of the right [are]

sufficiently clear [so] that a reasonable official . . . understand[s] that what he is doing

violates that right." *Cofield v. Randolph County Comm'n*, 90 F.3d 468, 470 (11th Cir. 1996).

Qualified immunity almost always protects government actors; "only in exceptional

cases will [they] have no shield against claims made against them in their *individual*

*capacities*." *Lassiter*, 28 F.3d at 1149 (emphasis in original).  In fact, qualified immunity

almost always applies to claims for damages, but as the Eleventh Circuit has noted, "the

defense is a narrow one, leaving plaintiffs other avenues of relief." *Id.* at 1149 n.2.  A

plaintiff may bring a claim for damages against government actors in their official capacity

absent Eleventh Amendment immunity, or may seek injunctive relief.  *Id.*; *see also*

discussion *supra*.

In this circuit, courts are instructed to use a two-part analysis to evaluate qualified

immunity claims.  The initial burden is on the public official to establish, at the time of the

occurrence of the matters complained of, that he was acting within the scope of his

discretionary authority. *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983).  Then, in

order to impose liability upon defendant government officials, the plaintiff must establish

the absence of objective good faith by demonstrating that "the official's alleged

misconduct was 'objectively unreasonable' in that it violated clearly established law."

*Schopler v. Bliss*, 903 F.2d 1373, 1380 (11th Cir. 1990) (quoting *Harlow*, 457 U.S. at 818).

"For qualified immunity to be surrendered, pre-existing law must dictate, that is truly

compel (not just suggest or allow or raise a question about), the conclusion, for every like-

11

situated, reasonable government agent, that what the defendant is doing violates federal law in the circumstances." *Lassiter*, 28 F.3d at 1150.

Qualified immunity is applicable only to claims for monetary relief made against public officials acting in their individual capacities. Here, the plaintiff has made a claim for damages against each of the defendants.

### b.   First Amendment.

The individual defendants argue that they are entitled to qualified immunity from Smith's First Amendment claims against them in their individual capacities.[6] The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."[7] U.S. CONST. amend. I. As such, it protects government employees from dismissal due to political patronage unless "party affiliation is an appropriate requirement for the effective performance of a particular position." *Parrish v. Nikolits*, 86 F.3d 1088, 1093 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 1818 (1997). However, the personal liability of individual government officials for dismissals due to political patronage is limited by qualified immunity. *Id.* at 1094.

___

[6] The Council members do not argue that they are entitled to absolute legislative immunity; *see Council Members' Brief in Support of Motion to Dismiss* at 9-11 (adopting the arguments in Spencer's brief in support of her motion to dismiss); and the court doubts that they would be so entitled because, for the purposes of absolute legislative immunity, an act is deemed legislative, rather than administrative or managerial, when it is policymaking and of general application. *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1011 (11th Cir. 1992); *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062 (11th Cir. 1992) ("Only those acts which are 'necessary to preserve the integrity of the legislative process' are protected.") (quoting *United States v. Brewster*, 408 U.S. 501, 517 (1972)); *Crymes v. DeKalb County, Ga.*, 923 F.2d 1482, 1485 (11th Cir. 1991) (act of voting alone does not make act legislative if the vote simply enforces existing policy instead of creating policy).

[7] Although facially it appears that Smith can make a First Amendment claim against the federal government only, the First Amendment rights and guarantees are incorporated into the Fourteenth Amendment and applied to the states. *Fiske v. State of Kansas*, 274 U.S. 380 (1927).

12

In order to invoke the protection of qualified immunity, individual defendants need not show, and the court need not decide, whether the plaintiff can lawfully be fired for political patronage reasons; as the analysis in Section III.B.2.a, *supra,* made clear, individual defendants will prevail if "it was not clearly established that firing Plaintiffs for political patronage reasons would violate federal law." *Beauregard v. Olson,* 84 F.3d 1402, 1404 (11th Cir. 1996).

In this case, Smith points the court to no prior case law, and the court finds none, that "developed in such a concrete and factually defined context to make it obvious to every reasonable person" that firing a person in Smith's position for political patronage reasons would violate her First Amendment rights as she alleges. *Id.* To the contrary, the Eleventh Circuit has recently upheld the qualified immunity defense of other individual government officials accused of political patronage firings. *See Gordan v. Cochran,* 116 F.3d 1438, 1439 (11th Cir. 1997) (summarily affirming qualified immunity for First Amendment claims against county sheriff who dismissed a project administrator, a projector coordinator and a media officer for political reasons); *Parrish,* 86 F.3d at 1093-94 (affirming qualified immunity for First Amendment claims against county property appraiser who dismissed office employees for political reasons); *Beauregard,* 84 F.3d at 1404 (affirming qualified immunity for First Amendment claims against county tax collector who dismissed deputized employees for political reasons).

According to the Eleventh Circuit, "defendants who allegedly violate public employees' First Amendment freedoms rarely act within 'clearly established' contours of law." *Hansen v. Soldenwagner,* 19 F.3d 573, 575 (11th Cir. 1994). This is because the First

13

Amendment right not to be fired for political patronage reasons is "determined based on a standard 'framed in vague and sweeping language certain to create vast uncertainty.' In the light of such a vague standard, 'elected and appointed officials at all levels . . . no longer . . . know when political affiliation is an appropriate consideration in filling a position.'" *Beauregard*, 84 F.3d at 1405 (quoting Justice Powell's dissent in *Branti v. Frinkel*, 445 U.S. 507, 522-24 (1980)).

The available evidence leaves no room for any doubt that the individual defendants here were exercising discretionary authority when they engaged in the conduct about which Ms. Smith complains. Moreover, the plaintiff can point to no controlling decisional precedent which had, at the time of the events complained of, established that the mayor, council Members, and the director of a major division of a city department could not discharge the assistant director of that division for political reasons.

The individual defendants are entitled to dismissal on qualified immunity grounds of all claims that they caused the plaintiff to be terminated from her employment because of the exercise of her rights under the First Amendment to the United States Constitution.

### c. Fourteenth Amendment Equal Protection.

In her amended complaint, Smith alleges the defendants discriminated against her on the basis of her gender and age in violation of the Fourteenth Amendment when they selected a younger male for the position of Director of Recreation and Landscape Management. *First Amendment to Complaint* at ¶ 12. The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is

14

essentially a mandate that state governments treat all persons similarly situated alike. *Pyler v. Doe*, 457 U.S. 202, 216 (1982), *reh'g denied*, 458 U.S. 1131 (1982). Thus, to state an equal protection claim, a plaintiff must allege that he was treated differently from other similarly situated individuals. *City of Clebourne v. Clebourne Living Ctr.*, 473 U.S. 432, 439 (1985). In this case, Smith alleges that the individual defendants treated her differently from younger males. *First Amendment to Complaint* at ¶ 12.

Like the plaintiff in *GJR Investments*, Smith does not explicitly claim that her "equal protection" rights were violated.[8] Rather, she claims that the alleged difference in treatment "deprived [her] of her rights . . . under the Fourteenth Amendment to the United States Constitution . . . and 42 U.S.C. § 1983." *First Amendment to Complaint* at ¶ 12 (Count Four). Nowhere does the plaintiff allege that any defendant intentionally discriminated against her on the basis of age or gender. In order to maintain a claim that the Equal Protection Clause has been violated, plaintiff must both allege and prove purposeful discrimination. *GJR Investments*, at 1367-68.

In *GJR Investments,* the Eleventh Circuit chastised the district court for going "beyond the permissible boundaries of Fed. R. Civ. P. 8, in effect supplying [the plaintiff] with an equal protection claim when none was evident on the face of the complaint." *GJR*

---

[8] In this case, Smith alleges only that the individual defendants treated her differently from younger males. *First Amendment to Complaint* at ¶ 12. In *GJR Investments*, according to the Eleventh Circuit:

> [t]he district court divined an equal protection claim from . . . an allegation that GJR's development applications had been subjected to stricter analysis vis-a-vis other unspecified development applications filed in Escambia County, and an allegation that GJR had been required to present its application to the Zoning Board directly, unlike other developers in Escambia County.

*GJR Investments*, 132 F.3d at 1364.

*Investments*, 132 F.3d at 1369. The court wrote, "a plaintiff must not be permitted, through
the use of the kind of 'shotgun' pleading tactic evident here, to strip government officials
of the protection provided by the official immunity doctrine." *Id.* (quoting *Marx v.
Gumbinner*, 855 F.2d 783, 792 (11th Cir. 1988)). The court explained:

> "Among the cardinal principles of our Anglo-American system of justice is
> the notion that the legal parameters of a given dispute are framed by the
> positions advanced by the adversaries, and may not be expanded sua sponte
> by the trial judge." *Doubleday & Co. v. Curtis*, 763 F.2d 495, 502 (2d Cir.
> 1985). A district court may not infer claims other than those that plainly
> appear on the face of the complaint to defeat a defense of qualified immunity.
> To do so is to ignore both the heightened pleading standard for § 1983
> claims that is the law of this circuit and the Supreme Court's call for a "firm
> application of the Federal Rules of Civil Procedure" in cases where qualified
> immunity is asserted. *Butz v. Economou*, 438 U.S. 478 (1978). The district
> court transgressed both of these principles in divining an equal protection
> claim from GJR's complaint.

*GJR Investments*, 132 F.2d at 1369 (citations modified).

In *GJR Investments* the Eleventh Circuit resolved any remaining doubts about the
applicability of a heightened pleading standard for § 1983 claims against individual
governmental actors. At the motion to dismiss stage, the court may restrict itself to review
of a complaint under the more relaxed Rule 12(b)(6) standard of failure to state a claim.
The court looks to whether the plaintiff has "sufficiently alleged (1) that it was treated
differently from similarly situated persons, and (2) that the defendants [subjected the
plaintiff to unequal treatment] for the purpose of discriminating against [the plaintiff]." *GJR
Investments* at 1367 (citing *Snowden v. Hughes*, 321 U.S. 1, 6, 64 S. Ct. 397, 401 (1984)).
Quoting *Snowden*, the Court in GJR Investments made it clear that simply alleging that the

plaintiff had been subject to "unequal" treatment is insufficient to satisfy the purposeful

discrimination allegation requirement. The court, quoting from *Snowden*, said:

> The lack of any allegations in the complaint... tending to show a purposeful
> discrimination . . . is not supplied by the opprobrious epithets "willful" and
> "malicious" . . ., or by characterizing [the defendant's actions] as an unequal,
> unjust, and oppressive administration of the laws . . . . These epithets
> disclose nothing as to the purpose or consequence of [the defendant's
> actions] . . . . Such allegations are insufficient under our decisions to raise
> any issue of equal protection of the laws.

*GJR Investments* at 1368.

In order to avoid a defense of qualified immunity asserted in response to an equal

protection claim, the plaintiff must allege that the defendants were motivated by purposeful

intent to discriminate against plaintiff on the basis of her gender or age. *See Mencer v.

Hammonds*, 134 F.3d 1066 (11th Cir. 1998), which acknowledged the *GJR Investment*

holding "that defendant was entitled to qualified immunity on an equal protection claim at

the dismissal stage because the plaintiff failed to plead differential treatment and

purposeful discrimination."

Because the plaintiff has not alleged that any defendant intentionally discriminated

against her on the basis of her gender or age, the individual defendants are each entitled

to dismissal of the Fourteenth Amendment equal protection claims against them.

### d.  Retaliation.

In Count Eight of her amended complaint, plaintiff alleges that "all of the individual

defendants are responsible for their part in the retaliation against plaintiff for her pursuit

of her protected activities in filing her EEOC charges." *Amended Complaint* at ¶ 24. She

claims that "their retaliation against her constitutes deprivation of her right to be free from

17

such retaliation under state law and thereby violations (sic) of 42 U.S.C. § 1983." *Id.* Each of the defendants claims qualified immunity as to this claim. The Eleventh Circuit has addressed this issue recently. In *Badia v. City of Miami,* 133 F.3d 1443 (11th Cir. 1998), a former city employee claimed that the Director of the Department of Public Works of the City of Miami had "violated her First Amendment free speech rights by terminating her employment and severance pay benefits in retaliation for filing an EEOC Charge of Discrimination . . . ." *Badia,* 133 F.3d at 1445.

The Eleventh Circuit held that the individual was entitled to qualified immunity on plaintiff's claim of retaliation for filing of the EEOC Charge of Discrimination. The Court noted that in the plaintiff's EEOC Charge and in her federal court complaint, the plaintiff had, as does Smith here, "discussed only harm that she personally suffered and sought damages only to remedy that personal harm." The Eleventh Circuit noted that "such speech which exposes personally suffered discrimination for personal benefit is not entitled to First Amendment protection." *Id.* The plaintiff in *Badia,* "[i]n an attempt to distinguish her speech from private grievances seeking redress for personal harm, . . . contend[ed] that her complaints deserve First Amendment protection because she filed a claim with the EEOC and a suit in federal court." *Id.* at 1446. The court said:

> [I]t is not clearly established in this circuit that an EEOC charge and a federal court complaint involving an otherwise purely personal matter are speech on a matter of public concern that are entitled to First Amendment protection. Lee's alleged actions did not violate clearly established First Amendment rights, and qualified immunity protects Lee from Badia's 42 U.S.C. § 1983 First Amendment claim.

*Id.*

18

Like the defendant in *Badia*, the defendants here are entitled to invoke the defense

of qualified immunity. The retaliation claims against them in their individual capacities will

therefore be dismissed.

### 3. Fourteenth Amendment Due Process.

In Count Six of the amended complaint, Smith alleges that she was "unlawfully

deprived of her due process rights," but fails to specify whether she refers to procedural

due process, substantive due process, or both. *First Amendment to Complaint* at ¶ 17. The

plaintiff is exceptionally vague regarding the basis and the legal theory upon which she

bases her due process claims. In Paragraph 2 of her amended complaint, she states:

> Since the filing of Plaintiff's original complaint, the Defendants have taken the
> following actions: On October 29, 1997, the disciplinary hearing to which
> Plaintiff had been subjected for discriminatory and retaliatory reasons was
> concluded when the Hearing Officer issued his Findings of Fact. On
> November 21, 1997, the Defendant City and the Defendant Spencer took
> action against Plaintiff by notifying her of her immediate termination. This
> discipline was grossly in excess of what was warranted by the alleged
> transgression, even taking it all as true. Furthermore, the Defendants had
> independent knowledge that the allegations supporting the accusations were
> not all true. Plaintiff timely appealed her termination to the City Council of the
> City of Huntsville. The City Council Defendants heard Plaintiff's appeal on
> January 15, 1998, and they found against her for the same discriminatory and
> retaliatory reasons that Plaintiff was subjected to this proceeding in the first
> place.

#### (1) Substantive Due Process.

As an initial matter, the court notes that any attempt by the plaintiff to assert a

substantive due process claim is unavailing. In *McKinney v. Pate*, 20 F.3d 1550 (11th Cir.

1994), the Eleventh Circuit noted that the concept of substantive due process involves

rights created under the Constitution and not under state law. *McKinney*, 20 F.3d at 1556.

19

Since employment related claims involve rights created under state law rather than the Constitution, substantive due process is not implicated in actions involving claims arising out of the termination of public employees. *Id. See also Carey v. Dean*, 32 F.3d 1521, 1526 (11th Cir. 1994). In *McKinney*, the Eleventh Circuit specifically overruled prior Eleventh Circuit precedent which had authorized a claim of violation of substantive due process in the public employment law context, holding that no such maintainable claim exists. *McKinney*, 20 F.3d at 1560. As a consequence of the Eleventh Circuit's decision in *McKinney*, the plaintiff in the present case has no maintainable claim for deprivation of substantive due process in this action.

### (2)    Procedural Due Process.

Any procedural due process claim that Ms. Smith may attempt to bring is similarly unavailing. She alleges that defendants "failed to give plaintiff any of the progressive discipline that is called for in the personnel policies of the City of Huntsville." She claims that she was "entitled to the progressive discipline called for in the City's own personnel manual." *Amended Complaint* at ¶ 19.

In *McKinney*, 20 F.3d 1550 at 1562-63, the Eleventh Circuit held that if a prospective § 1983 plaintiff has an adequate remedy available under state law to redress the injury alleged to have been suffered by means of a procedural deprivation, he or she has no maintainable claim under 42 U.S.C. § 1983 for a Fourteenth Amendment procedural due process violation. Thus, the availability of an adequate state remedy to redress the alleged procedural deprivation is not only determinative of whether the plaintiff can proceed in a federal forum, but also as to whether the plaintiff has a maintainable claim for deprivation

of procedural due process at all. *Id.* See *Narey v. Dean*, 32 F.3d 1521, 1526-28 (11th Cir. 1994). See also *Boatman v. Town of Oakland*, 76 F.3d 341, 346 & n. 13 (11th Cir. 1996).

The State of Alabama has available to City employees like Smith procedures by which to address grievances related to their employment.[9] The Alabama Supreme Court recognized in *Evans v. City of Huntsville*, 580 So. 2d 1323, 1325 (Ala. 1991), that the state trial court properly utilized the common law writ of certiorari to review on due process ground a decision of the City of Huntsville to discharge its employee. *See also Personnel Bd. of Jefferson County v. Bailey*, 475 So. 2d 863, 867 (Ala. Civ. App. 1985). The *Evans* court further recognized that the trial court was responsible for reviewing that decision to protect the due process rights of the complainant. *Evans*, 580 So. 2d at 1325; *see also Ex parte Greenberg*, 395 So. 2d 1000, 1002 (Ala. 1981). The Eleventh Circuit has squarely held that Alabama state courts provide review of personnel determinations adequate to satisfy the *McKinney Bell v. City of Demopolis*, 86 F.3d 191, 192 (11th Cir. 1996), requirement of an adequate state process. Thus, any complaint that Smith may have about the disciplinary process which led to her termination may be addressed in the courts of the State of Alabama. She has no basis upon which to found a procedural due process claim in this court.

**IV. Conclusion.**

---

[9] Significantly, Smith, like the plaintiff in *McKinney*, did not allege in her amended complaint that the state procedures are inadequate. *McKinney*, 20 F.3d at 1563 n.18; *see also Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) ("The [plaintiffs] . . . failed to state a valid procedural due process claim because they [did] not allege . . . that Alabama law provided them with an inadequate post-deprivation remedy.").

21

In conformity with the foregoing, all claims against the individual defendants will be

dismissed. A separate order will be entered.

Done, this ____ day of September, 1998.

Edwin L. Nelson
United States District Judge

SCANNED

22