FILED

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

99 OCT 13 AM 10: 34

U.S. DISTRICT COURT
N.D. OF ALABAMA

BETTY F. SMITH,                    ]
                                   ]
    Plaintiff(s),           ]
                                   ]
    vs.                     ]    CV-97-N-2727-NE
                                   ]
**CITY OF HUNTSVILLE,**            ]
                                   ]
    Defendant(s).           ]

**ENTERED**

OCT. 13 1999

### Memorandum of Opinion

In this action plaintiff Betty F. Smith ("Ms. Smith") asserts various claims for alleged discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.,* the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.,* and the First Amendment to the United States Constitution in connection with her employment and termination by the City of Huntsville, Alabama ("Huntsville"). Originally, Ms. Smith sued Huntsville and various individual officials of that city. The other defendants having been previously dismissed, the only remaining defendant is the City of Huntsville.

The court presently has for consideration the defendant's motion for summary judgment[1]. The motion has been fully briefed and, upon due consideration, will be granted with respect to all claims except as to the claim that the City of Huntsville discriminated

---

[1] In a related matter, the defendant has moved the court to strike certain evidentiary materials submitted by plaintiff in opposition to the pending motion for summary judgment. The court will consider this motion, and the plaintiff's response contemporaneously with the motion for summary judgment, and will disregard any portions of the facts and exhibits which are not properly before the court on summary judgment.



against the plaintiff with respect to filling the position of Director of Recreation and Landscape Management in the fall of 1996 because of her gender and age

## I.    Facts.[2]

Betty Smith began her employment with Huntsville in September of 1985 as the Superintendent of Recreation. Throughout the ensuing years, her title would change to Deputy Director of Recreation and then to Manager of Recreation Services.[3] According to Smith, she was in charge of the City's entire recreation division, including recreational centers and activities. Her day-to-day responsibilities entailed supervising recreation department employees such as the superintendents of athletics, community events, and neighborhood services, the supervisors of the community center, recreation aides, and "hundreds" of parent volunteers that work in the various departments. Her duties also included planning and budgeting for sports teams and events, and reviewing discipline problems brought to her attention by the superintendents. From 1993 until her termination, as the Manager of Recreation Services, she served as the Affiliate Director of the Alabama Recreation and Parks Association (ARPA).[4] As Affiliate Director, Smith was "ultimately responsible" for everything that happened in the department.

---

[2] In developing the statement of facts in this opinion, the court considered those facts claimed to be undisputed by the parties, the parties' respective responses to those claims, and the court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994), *cert. denied, USX Corp. v. Cox*, 114 S. Ct. 900 (1995).

[3] The changes in the plaintiff's title were just that. They did not represent promotions or substantial changes in her assigned duties.

[4] ARPA is a state organization that develops standards and operating procedures for statewide competitive sporting events. It provides a framework for the uniform organization of post-season sports tournaments for young people and related special events.

2

On May 16, 1996, ARPA sanctioned the Huntsville program by imposing a six-year suspension of its programs for violations of the ARPA Competitive Sports Programs Rules. As a result of that suspension, Huntsville's boys and girls sports teams were precluded from participating in all ARPA competitive sports events until June 2, 2002. The ARPA Competitive Sports Committee cited Huntsville for: (1) use of ineligible players and/or roster violations at a state basketball tournament; (2) failure of a team to advance to the next level of competition ("no-shows"); (3) use of ineligible players and/or roster violations at a district basketball tournament; and (4) unsportsmanlike conduct at a basketball tournament. According to Smith, Huntsville had never before received a sanction of such magnitude. On June 10, 1996, Ms. Smith replied by letter to the ARPA sanction stating, in pertinent part, that "Recreation Services will abide by the decision made by the Competitive Sports Committee and will not appeal in part/whole any alleged violation."

In September of 1996, Loretta Spencer ("Spencer") was elected Mayor of Huntsville, and was sworn into office in October of 1996. According to Smith, she did not actively campaign for Spencer, nor any other mayoral candidate. For example, she claims that when Spencer asked her about assisting with a political rally on opening day of the baseball season, she refused Spencer's request because the policy of the Recreation Services department was to remain neutral in political campaigns. The plaintiff alleges that because she did not support Spencer, the mayor was intentionally "spiteful" toward her. At her victory party and inauguration celebration, Mayor Spencer allegedly avoided shaking Smith's hand. In addition, the plaintiff notes that Spencer did not meet with her during the campaign as she did with other department heads.

3

As part of Mayor Spencer's reorganization plan for the City of Huntsville, she proposed to the City Council that it create a Department of Recreation and Landscape Management, and a corresponding department head position of Director of Recreation and Landscape Management. In October of 1996, the City Council adopted the proposal. In response to a job announcement for the new position, Smith submitted an application and resume. She, along with four other candidates, were interviewed around December of 1996. According to the defendant, Smith had a poor interview and was ranked fourth out of the five interviewees. According to the defendant, she was ranked low because her answers to the interviewer were not consistent with Spencer's "vision" for the department, and she failed to articulate a plan for the department to reach the children who "needed to be reached." The plaintiff denies that she was ever realistically considered for the position, and, in fact, Spencer admits that she was "disappointed" that Smith was being interviewed because it created a "false representation" to bring her in. Subsequently, Ralph Stone ("Stone"), Smith's subordinate of eleven years, was promoted to the Director of Recreation and Landscape Management. On January 10, 1997, Smith filed a discrimination charge with the EEOC claiming sex and age discrimination. She received a "Right to Sue" letter on July 30, 1997. She later amended the charge to add a claim of retaliation.

In addition to reorganizing the recreation department, Spencer authorized her administrative assistant, John Holladay ("Holladay"), to investigate the ARPA sanctions.[5] On December 18, 1996, City Attorney Joffrion ("Joffrion") and Assistant City Attorney Cates

---

[5] Holladay eventually turned the entire matter over to Huntsville's legal department.

("Cates") met with Spencer and Holladay to discuss the ARPA sanctions. During this meeting, Spencer authorized Cates to proceed with disciplinary measures against the plaintiff. In response, Cates immediately began to draw up multiple drafts relating to the nature of the disciplinary proceedings. On January 21, 1997, Cates and Stone met with Smith to discuss her side of the events that led up to the ARPA sanctions.

On February 3, 1997, Huntsville served formal disciplinary charges and a request for a disciplinary hearing on the plaintiff. As reflected in the disciplinary charges, Smith was charged with three violations of the Huntsville Personnel Policies and Procedures Manual: conduct unbecoming an employee; incompetency in the performance of her duties; and neglect of duty. Specifically, Huntsville charged: (1) As Manager of Recreation Services Smith failed to take appropriate actions which could have either avoided the sanctions altogether, or, have lessened the severity of the sanctions; (2) Despite the fact that Smith was on notice from both local league volunteers and members of the ARPA Competitive Sports Committee that some teams were playing ineligible players in basketball games, she failed to take appropriate remedial action to assure that Huntsville teams played only eligible players; (3) Knowing that a team had been found to be in violation of ARPA rules, Smith and the staff under her supervision failed to assure that Recreation Services athletic teams complied with ARPA Competitive Sports rules so that there were no future violations of these rules; (4) Smith failed to appeal various decisions of violations leading up to and including the sanction of the six year suspension imposed on the programs; (5) During the period of January through June 1996, Huntsville Recreation Services teams, or individuals associated with the Recreation Services program involved in ARPA tournaments, were

found to be in violation of the ARPA Competitive Sports Manual a total of six times. On each occasion when sanctions had been imposed, Smith failed to fully investigate the facts which formed the basis of the violations. Additionally, Smith failed to take any timely remedial action against the coaches, league volunteers, or Recreation Services' employees who were responsible for the violations.

During a total of six days during the months of April through August of 1997, a formal disciplinary hearing was conducted before Hearing Officer H. Harold Stephens ("Stephens"). Stephens issued a 108-page report in which he found that Smith was largely responsible for the sanctions having been imposed. Following receipt of the Stephens report, Huntsville terminated Smith in November of 1997. In January of 1998, Smith received a second disciplinary hearing before the Huntsville City Council in connection with her termination. During that hearing, Smith was represented by counsel, was given an opportunity to present an opening statement and closing argument, and to cross-examine Huntsville's witnesses. In a 4-1 decision, Huntsville City Council upheld the plaintiff's termination.

The plaintiff's first complaint, filed October 15, 1997, asserted gender discrimination, First Amendment, and retaliation claims. An amended complaint, filed in February of 1998, asserted *inter alia,* an ADEA claim and claims against individual members of Huntsville City Council. On October 1, 1998, the court dismissed all the claims against the individual defendants.

## II.   Summary Judgment Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. *Id.* at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon

7

motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52; *see also Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11(1983) (indicating the standard for summary judgment is "[s]ubstantively . . . very close" to that for motions for directed verdict). However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient

8

evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are functions of the jury, and, therefore, "[t]he evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

**III.   Discussion of the Claims.**

    **A.   Failure to Promote.**

Smith asserts that Huntsville discriminated against her on the basis of her age and gender when it refused to promote her to the newly created position of Director of Recreation and Landscape Management in late 1996. Title VII prohibits an employer from discharging or otherwise discriminating against an employee on the basis of gender. 42 U.S.C. § 2000e-2(a)(1).  The ADEA, 29 U.S.C. § 623, imposes similar restrictions when conduct is based upon an employee's age if that employee is forty years of age or older. A plaintiff who alleges disparate treatment based upon gender under Title VII, or age under the ADEA, must prove that the defendant acted with discriminatory purpose. *See Nix v. WLCY Radio Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984), *reh'g denied*, 747 F.2d 710 (11th Cir. 1984) (race discrimination case); *See Jameson v. The Arrow Company*, 75 F.3d 1528, , 1531 (11th Cir. 1996)(ADEA). A plaintiff can create a rebuttable presumption of discriminatory intent by establishing a prima facie case, *Young v. General Foods Corp.*, 840 F.2d 825, 828 (11th Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). A

plaintiff may establish a prima facie case in three ways: (1) "by presenting direct evidence of discriminatory intent; [(2)] by meeting the test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); or [(3)] by demonstrating through statistics a pattern of discrimination." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990).

### 1.    Direct Evidence and Statistical Evidence.

Direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987). In contrast, if the evidence presented only "suggests" discrimination, or is subject to more than one interpretation, it is not direct evidence. *Merritt*, 120 F.3d at 1189. A second means by which Smith may prove her prima facie case is with the presentation of statistical evidence that demonstrates a "pattern and practice" of gender discrimination. *Young*, 840 F.2d at 828. Consequently, Smith presents no direct evidence or statistical evidence of gender discrimination by Huntsville. Instead, she must attempt to establish discriminatory intent through circumstantial evidence.

### 2.    Circumstantial Evidence.

Where a plaintiff's discrimination claim is based on circumstantial evidence, the court employs the burden-shifting framework established in *McDonnell Douglas Corp.*, 411 U.S. 792. The Eleventh Circuit uses the analytical framework established in *McDonnell Douglas* for both ADEA and Title VII discrimination claims. *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). First, the plaintiff has the burden of establishing a prima facie case of discrimination. "Establishment of the prima facie case in effect

10

creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden of production then shifts to the defendant, requiring it to articulate some legitimate, nondiscriminatory reason for the alleged discriminatory employment action. *Id.* This burden of production is "exceedingly light," as the defendant must merely proffer nondiscriminatory reasons, not prove them. *See Meeks v. Computer Assoc. Int'l.*, 15 F.3d 1013, 1021 (11th Cir. 1999).

Once the defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination "drops from the case." *Burdine*, 450 U.S. at 255 & n.10. However, the plaintiff has the opportunity to present evidence, including evidence used to establish the prima facie case, that would permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997), *cert. denied*, 118 S. Ct. 685 (1998). The plaintiff may prove that the defendant intentionally discriminated against her "'either directly by persuading the court that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Carter v. City of Miami*, 870 F.2d 578, 584 (11th Cir. 1989) (quoting *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1445 (11th Cir. 1985), *cert. denied*, 474 U.S. 1005 (1985)). "Plaintiff's burden at summary judgment is met by introducing evidence that could form the basis for a finding of facts, which when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that the plaintiff has established pretext." *Hairston v.*

11

*Gainesville Sun Publishing Co.*, 9 F.3d 913, 921 (11th Cir. 1993). If a plaintiff succeeds in this burden, the "disbelief of the defendant's proffered reasons, together with the prima facie case, is sufficient circumstantial evidence to support a finding of discrimination," and to preclude summary judgment. *Combs,* 106 F.3d at 1529.

In a promotional decision, the plaintiff's prima facie case under Title VII consists of proof: (1) that she is a member of a protected minority; (2) that she was qualified for the promotion; (3) that she was rejected despite these qualifications; and (4) that after the rejection, the defendant either continued to attempt to fill the position, or in fact filled the position with a person outside the plaintiff's protected class. *Walker v. Mortham*, 158 F.3d 1177, 1186 (11th Cir. 1998). The prima facie case in an ADEA case is substantially similar. *Benson v. Tocco, Inc.*, 113 F.3d 1203, 1207-8 (11th Cir. 1997).

Here, Ms. Smith has established a prima facie case for gender discrimination by showing (1) she is female; (2) her work experience and education made her qualified for the position which she applied for; (3) she did not receive the promotion; and (4) her subordinate of eleven years, Ralph Stone, a male, received the promotion. Similarly, on her ADEA claim, she has presented evidence that she was over forty and that Stone was substantially younger than was she.

Huntsville replies Ms. Smith was not promoted to the new position because her interview was disappointing. (Movant's Initial Submission p.9). However, in her response, Ms. Smith has proffered substantial evidence to show that the proffered reason was merely pretextual. When Mayor Spencer learned that Betty Smith was going to be interviewed by Doc Holladay for the Director of Recreation and Landscape Management position, she

asked why Smith was being considered. (Spencer Depo. p. 240). Moreover, Spencer expressed her "disappointment" in interviewing Smith because it would be "a misleading thing to bring her in." (Spencer Depo. p. 230, 340). Finally, Spencer admits that before the interviews occurred, she "made clear" to Holladay that Smith was not "appropriate" for the job. (Spencer Depo. p. 240-41). The foregoing statements of Spencer show that regardless of the interview, Betty Smith was not going to receive the promotion. As such, she has presented sufficient evident to disbelieve the proffered reasons of the defendant and survive summary judgment as to her failure to promote claim based on gender and age.[8]

### B.    Disciplinary Hearings.

The plaintiff asserts that she was unfairly disciplined based upon her gender. Again, the framework set out in *McDonnell Douglas* is used to evaluate the circumstantial evidence proffered by Smith.[7] To establish a prima facie case of discrimination under the instant circumstances, Smith must demonstrate that (1) she is a member of a protected class; and either (2) she was guilty of the charges against her; or that she engaged in misconduct similar to that of a person outside the protected class and (3) the disciplinary measures enforced against her were more severe than those enforced against other

---

[8] As for pretext, Huntsville asserts that plaintiff has not carried her burden of showing, by significantly probative evidence, any discriminatory intent on the party of anyone during the promotional process. However, as stated by the Eleventh Circuit, "once the district court determines that a reasonable jury could conclude that the employer's proffered reasons were not the real reason for its decision, the court may not preempt *the jury's role* of determining whether to draw an inference of intentional discrimination from the plaintiff's prima facie case taken together with rejection of the employer's explanations for its action." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1538 (11th Cir. 1997)(emphasis added).

[7] Under this test, the elements of a prima facie case may be modified to fit the circumstances. "The *McDonnell Douglas-Burdine* proof structure 'was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 594 (11th Cir. 1987) (quoting *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983)).

persons outside her protected class who engaged in similar misconduct. *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989).

As a female, Smith is a member of a protected class and the disciplinary proceedings and her termination constitute adverse employment decisions. However, she is unable to point to evidence of a person outside her protected group who misbehaved in a sufficiently similar way and who was not subjected to substantially similar discipline.

The defendants argue that Smith has failed to point to a similarly situated male employee who was treated more favorably than was she. As part of the prima facie case, the plaintiff must show that her employer treated similarly situated males more favorably than herself. *Holifield v. Reno*, 115 F.3d 1555, 1562, (11th Cir. 1997). To make a comparison of the plaintiff's treatment to that of male employees, the plaintiff must show that she and the employees are similarly situated in all relevant aspects. *Id.* "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir.), *opinion modified by* 151 F.3d 1321 (1998) (quoting *Holifield v. Reno, supra)*. It is required that the "quantity and quality of the comparator's misconduct be *nearly identical* to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) (emphasis added).

Smith identifies a number of employees whom she believes engaged in misconduct similar to hers, but received punishment less severe than did she. She described the

14

offenses with which she was charged as relating to her competence (in controlling her employees and the volunteers who worked with her department) and her policy decisions (deciding not to appeal the ARPA sanctions). According to the disciplinary recommendation, Smith's conduct included: (1) failure to take appropriate action to prevent or lessen the six year suspension of the City's Recreation Services programs; (2) failure to take appropriate remedial action to assure or have the staff of Recreation Services assure that teams played only eligible players; (3) failure on the part of Smith and her staff under her supervision to assure that athletic teams comply with ARPA rules so that there would be no future violations; (4) failure to appeal various decisions of violations leading up to and including the sanction of six years suspension; (5) failure to fully investigate the facts which formed the basis of these violations; and (6) failure to take any remedial action against the coaches, league volunteers, or Recreation Services' employees who were responsible for the violations during this period of time. (Betty Smith, City of Huntsville Request for Formal Disciplinary Hearing, February 3, 1997).

The court does not agree that the issues relating to any of Smith's claimed comparators are sufficiently similar to her's for purposes of establishing a prima facie case. Instead, as stated by the Eleventh Circuit in *Maniccia*, the quantity and quality of the misconduct must be nearly identical. Instead of focusing on broad characterizations, the court must compare the actual instances of misconduct at issue. Merely because the instances of misconduct can be described as involving general competency or policy issues does not automatically make the parties involved similarly situated.

15

As for Layne Vaughn, his misconduct was not identical because it pertained to lack of supervision in regards to employees who vandalized city property. That situation is quite different from cheating in athletics, teams not showing up at events, and unsportsmanlike conduct. Moreover, Smith has failed to specifically compare her behavior with that of Vaughn. For example, there is nothing to suggest that Vaughn could have taken action in advance to prevent the destruction of property. Furthermore, Smith has not asserted that Vaughn's misconduct included the failure to make policy decisions like the appeal situation in Smith's case.

The conduct of Ralph Stone was also different from that of Smith. Stone was the Superintendent of Athletics when ARPA first sanctioned ("first sanctions") the City of Huntsville in a matter unrelated to the events surrounding Smith's discipline. However, there is no evidence that Stone's conduct in that matter was similar to Smith's conduct in the events leading up to, and the handling of, the ARPA matter at the center of this case. ("second sanctions"). For example, Stone was not the ARPA Affiliate Director when the first ARPA sanctions were imposed, whereas plaintiff was the Affiliate Director when the second ARPA sanctions were imposed. Moreover, the first ARPA sanctions were imposed as a result of a single incident of unsportsmanlike conduct by a parent of one of Huntsville's teams, whereas the second ARPA sanctions were imposed as a combined result of two incidents where ineligible players were used and roster violations occurred, a "no show, and an incident of unsportsmanlike conduct.[8] Finally, Mr. Stone successfully appealed the

---

[8] The incident with the parent appears to have been a spontaneous and isolated event over which Stone had no control and could not have anticipated. On the other hand, the sanctions imposed against Smith's organization resulted from repeated incidents of misconduct–a circumstance that with proper attention she should

first ARPA sanctions and was able to get them reduced to a one-year probation of Huntsville teams, whereas plaintiff did not even attempt to appeal the second ARPA sanctions. As such, the court is not willing to assume that simply because ARPA sanctioned the city, Stone's conduct was identical to that of Smith's.

The plaintiff also asserts that her conduct was no different than that of John Mayes, the Superintendent of Neighborhood Services (formerly known as Superintendent of Athletics). Mayes was in charge of the division of Recreation Services that runs league sports when ARPA sanctioned the city for the second time. However, Smith has failed to present evidence that shows the similarity between her conduct, and the way in which Mayes handled the matter. In contrast, the evidence shows that Mayes had very little knowledge of the activities that took place, and essentially let Smith deal directly with ARPA. It should also be noted that there was no specific comparison between Mayes's conduct and Smith's conduct. Apparently, the court is to assume that because of his position, Mayes had to be involved to the same degree as Smith.  However, such an assumption does not afford the court an adequate opportunity to analyze the quantity and quality of Mayes's conduct. Consequently, the evidentiary record does not reflect that the conduct of Smith and Mayes was similar enough to find them similarly situated.

Smith also compares her conduct to that of Tony Hughes, the Zone Coordinator in charge of the teams that were at the center of the events that led to the sanctions of Smith. In response to the ARPA sanctions, both Smith and Hughes were cited for violations of the

---

have been able to control.

17

same sections of the City of Huntsville Personnel Policies and Procedures. Specifically, Hughes's misconduct concerned (1) his conduct at a basketball tournament and, (2) his failure to perform duties in regards to the participation of ineligible players in the City basketball league.[9] In contrast, Smith was charged with six instances of misconduct. *See supra,* p.15. Included among these were a failure to appeal, and a failure to see that her staff responded and acted accordingly which did not apply to Hughes. Moreover, Smith was the director of the entire department, while Hughes was simply a zone coordinator for the basketball league. Accordingly, they were not similarly situated employees, and Smith can not establish a prima facie case as to her gender discrimination claim based on the disciplinary proceedings.

The court recognizes that Smith has proffered evidence by former Huntsville officials that intimates that the disciplinary proceedings levied against Smith were extreme in nature. However, the fact that Smith may have been treated harshly does not speak to the similarity of her conduct and punishment vis-a-vis that of her comparators. Neither Title VII nor the ADEA removes an employer's right to interpret its rules as it sees fit provided the rules are interpreted in a nondiscriminatory manner. *Jones v. Bessemer Carraway,* 137 at 1311-12. Huntsville was entitled to conclude that the misconduct of Smith was more serious than was the misconduct of her comparators.

It is undisputed that Huntsville had never received a sanction of the magnitude imposed by the ARPA on Smith's watch. Moreover, Smith's failure to appeal the suspension

---

[9]On February 5, 1998, Huntsville instituted a hearing against Hughes. The results of the Hughes hearing were highly contradictory to the facts found against Betty Smith.

lends credence to the notion that the ARPA sanctions were warranted. Under the standard imposed by *Maniccia*, the quantity and quality of the comparator's misconduct must be nearly identical to prevent courts from second guessing employers' reasonable decisions and confusing apples with oranges. To compare Smith's conduct with employees who were not involved with the ARPA sanctions, or who did not have the authority and responsibility of Smith, would cause the court to make the type of comparison expressly prohibited by controlling decisional authority in the Eleventh Circuit.

A plaintiff who fails to identify similarly situated comparators outside her protected group fails to make out a prima facie case of discrimination, and loses because she has the burden of proof. *McDonnell Douglas*, 411 U.S. at 802.

### C.   Retaliation.

Huntsville seeks summary judgment on the retaliation claim[10] based upon its contention that Smith cannot establish a causal link between her filing an EEOC charge on January 10, 1997, and Huntsville's commencement of disciplinary proceedings against her on February 3, 1997. *Movant's Initial Submission in Response to Exhibit D of the Court's Order*, at 14. Under Title VII, it is well established that the plaintiff does not have to prove the underlying discrimination claim in order to present a retaliation claim. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989). In order to make out a prima facie case of retaliation, Smith must show (1) that she was engaged in statutorily protected expression, (2) that Huntsville took an adverse employment action

---

[10]Title VII protects employees from discrimination by their employer "because he has opposed any practice made an unlawful employment practice by this title, or because he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3.

against her, and (3) a causal link between the protected expression and the adverse action. *Raney vs. Vinson Guard Service, Inc.,* 120 F.3d 1192, 1196 (11th Cir. 1997). Huntsville may rebut the prima facie case by articulating a legitimate nondiscriminatory reason for the employment action with credible evidence. *Taylor*, 175 F.3d 861, 868 (11th Cir. 1999). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. *Holifield v. Reno*, 115 F.3d 1555, 1567 (11th Cir. 1997).

As to the first element, "statutorily protected expression" includes: (1) filing an EEOC charge; 42 U.S.C. § 2000e-3(a); (2) formal and informal complaints to an employer; *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989); (3) written protests; *Smalley v. City of Eatonville*, 640 F.2d 765, 769 (5th Cir. Unit B 1981); and (4) warnings from employers not to complain about alleged discriminatory practices. *Morgan v. City of Jasper*, 959 F.2d 1542, 1547 (11th Cir. 1992). Because Smith filed an EEOC charge, she participated in statutorily protected conduct and meets the first requirement for her prima facie case.

As to the second element of her retaliation claim, an "adverse employment action" includes an action that falls short of an ultimate employment decision. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998). "Permitting employers to discriminate against an employee who files a charge of discrimination so long as the retaliatory discrimination does not constitute an ultimate employment action, could stifle employees' willingness to file charges of discrimination." *Id.* The disciplinary proceeding itself meets the standard for an adverse employment decision. Moreover, the fact that the

20

result of the proceeding was Smith's termination represents evidence upon which a reasonable jury might find an adverse employment action.

In order to avoid summary judgment on the issue of causation, Smith "merely has to prove the protected activity and the negative employment action are not completely unrelated." *EEOC v. Riechhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1991). Huntsville asserts that the investigation of Smtih was being conducted "long before" her EEOC charge was received on January 14, 1996. In particular, Huntsville points out that in December of 1996, the city attorney's office was recommending that disciplinary action be considered against Smith. In addition, that same month, Mayor Spencer authorized the assistant city attorney to prepare formal disciplinary charges against the plaintiff. However, it is undisputed that formal charges, including the type of hearing to pursue, were not determined until after the charge was filed. In fact, the assistant city attorney admitted that the decision as to what type of hearing to pursue had not been made when she drafted the charges in early January. In addition, the lack of causation argument is undermined by the short period of time between the filing of the charge and the formal disciplinary charges being served on Smith. *See Donelson v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (stating that the one month period between the filing of the discrimination complaint and the adverse employment action belied any assertion by the defendant that the plaintiff failed to prove causation). Furthermore, Smith has presented evidence that the day Huntsville received the charge, Stone came into Smith's office "very agitated" and stated that Smith would "not get him to give up or fail." He also told her to set up an appointment with Cissy Cates of the Huntsville Legal Department, because Cates wanted to interview

21

her about the ARPA sanctions. The evidence, that a decision concerning formal hearings was made soon after the charges were filed, coupled with Stone's remarks suggest that the events surrounding the retaliation claim were not completely unrelated. Accordingly, for summary judgment purposes, the plaintiff has established her prima facie case.

According to the defendant, "the factual record reveals that Huntsville commenced disciplinary proceedings against plaintiff, as Manager of Recreation Services, because of her responsibility for the imposition of the ARPA sanctions." (Movant's Initial Submission in Response to Exhibit D of the Court's Order, at 11). Since the proffered reason satisfies Huntsville's burden, Smith, if she is to avoid summary judgment on this claim, must present evidence showing that the defendant's proffered reason is unworthy of credence.

For Smith to succeed, she must demonstrate that the employer's proffered explanation is a pretext for retaliation. *See Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir. 1997). Smith's principal argument is that since the proceedings were discriminatory, Huntsville has not proffered a non-discriminatory reason for instituting them. However, as noted above, the proceedings were not discriminatory because Smith failed to proffer evidence of any similarly situated employee who was treated more favorably than was she. Consequently, Smith must demonstrate Huntsville's reason to instigate proceedings is a pretext for retaliation. She has failed in this regard and her claim must fail as well.

### D.     First Amendment.

Smith claims that she was disciplined and ultimately terminated because of Mayor Spencer's perception that she had not supported the mayor's political candidacy. In her brief, Smith analyzes her First Amendment claim under the political patronage cases. *See*

22

*Parrish v. Nikolits*, 86 F.3d 1088, 1093 (11th Cir. 1996)(stating that government employees are protected from political patronage firings unless the defendant can demonstrate that "party affiliation is an appropriate requirement for the effective performance of the position at issue here. . . ."); *Elrod v. Burns*, 427 U.S. 347 (1976). However, before the political patronage analysis is appropriate, Smith must make a prima facie showing that impermissible political animus motivated the challenged personnel decisions. *See Barrett v. Thomas*, 649 F.2d 1193, 1200 (11th Cir. 1981); *Tanner v. McCall*, 625 F.2d 1183, 1191 (5th Cir. 1980).

In *Tanner*, former deputies and employees of Lake County, Florida, brought suit against the newly-elected sheriff, Malcolm McCall, alleging that they were not reappointed either because of their lack of political support, or because the sheriff wanted room for appointment of his political supporters. 625 F.2d at 1188. In finding that political animus was not a motivating factor in the decision not to reappoint the plaintiffs, the court articulated a number of factors to be properly considered. For example, unlike many political patronage cases, the Lake County Sheriff's Department did not effectuate a wholesale replacement of employees. In particular, McCall did not fire all non-supporters, or only appoint supporters. Moreover, plaintiffs supplied no direct statements by McCall that political patronage motivated his appointments. *Id.*; *Cf. Brett v. Jefferson County, Georgia*, 123 F.3d 1429 (11th Cir. 1997 (defendant conceded that his decision not to reappoint non-supporters was based on their speech and actions during the election); *Parrish*, 86 F.3d at 1090 (newly-elected County Property Appraiser told non-supporters that he planned to fire them because they had not supported him in the elections). Finally, the evidence, such

as the sequence of events, was insufficient to support an inference that political animus motivated McCall to discriminate against the plaintiffs. *Tanner,* 625 F.2d at 1192.

Smith has failed to present any evidence that Spencer suggested that her lack of political support was the reason for any adverse employment action. In addition, no evidence was presented to show that a wholesale replacement of employees took place, nor was there evidence to indicate that all employees who did not support Spencer were terminated.  Instead, Smith presents evidence of (1) Spencer supporters who told her she should be supporting the campaign; (2) informal statements by persons the plaintiff cannot recall, encouraging plaintiff to support Spencer; (3) informal incidents the plaintiff could not specifically recall; (4) Spencer once referring to Smith as one of her best department heads; (5) the Opening Day event;[11] and (6) the victory party and inauguration celebration where Spencer allegedly made "every effort" to avoid shaking Betty Smith's hand. None of this, even taken as a "totality of circumstances" argument constitutes evidence that her lack of support in the mayor's race cost Smith her job. Instead, it merely shows that Smith had her feelings hurt because Spencer might not have been nice to her.

Much of the conduct Smith complains about is typical of political campaigns generally. It is hardly unusual that supporters of a political candidate would ask Smith for her support. Moreover, Smith's perception that Spencer was avoiding her could just as well suggest that, having been told that Smith as a city employee wanted to remain neutral,

---

[11]Spencer contacted Smith about campaigning at the opening day ceremonies of the city baseball league. Smith refused to assist Spencer because it was city policy to remain neutral in political campaigns. At the opening day ceremony, Smith alleges that Spencer "kept her distance from (Smith) and avoided any opportunity to speak to her."

Spencer went out of her way avoid any contact that might be perceived as involving Smith in the campaign. These incident fall far short to suggesting that political animus motivated the defendant's decision to discipline and terminate the plaintiff.

## IV.   Conclusion.

In accord with the opinions stated here, the defendant's motion for summary judgment will be granted with respect to all claims except as to the claim that the City of Huntsville discriminated against the plaintiff with respect to filling the position of Director of Recreation and Landscape Management in the fall of 1996 because of her gender and age. On that claim the motion will be denied by separate order to be entered contemporaneously herewith.

Done, this ___15th___ of October, 1999.

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

25